BROCK BARKLEY, ADMINISTRATOR OF JOHN M. PRIVETTE, DECEASED, v. J. L. THOMAS AND C. B. HELMS.

(Filed 19 November, 1941.)

**1. Appeal and Error § 37e—**

Where the parties waive a jury trial and agree that the court should hear and determine the entire controversy, the findings of fact made by the court, supported by competent evidence, are as binding and conclusive as the verdict of a jury.

**2. Executors and Administrators § 13b—**

A petition for the sale of lands to make assets to pay debts of the estate must set forth the amount of debts outstanding against the estate, the value of the personal estate and the application thereof, a description of all the legal and equitable real estate of the decedent with the estimated value thereof. and the names, ages, and residences, if known, of the devisees and heirs at law, C. S., 79, and further the devisees and heirs at law must be made parties to the proceedings, C. S., 80.

**3. Same—**

An administrator cannot maintain an action against his intestate's grantee to declare the estate conveyed forfeited upon the contention that the grantee had breached the condition subsequent in the deed, and that sale of the land was necessary to pay debts of the estate, the heirs at law not being parties and the requirements of a petition to sell lands to make assets not being set forth.

**4. Deeds § 14b—**

An absolute deed followed by stipulation that the sole consideration for the conveyance is the agreement of the parties of the second part to support and take care of the party of the first part for the remainder of his life, with provision that if the parties of the second part fail or refuse to do so then the conveyance should become null and void, creates a fee upon condition subsequent.

**5. Same—**

The breach of the condition subsequent contained in a deed entitles the grantor during his life, or his heirs after his death, to bring suit for the land or to declare the estate forfeited, but does not entitle the administrator to bring such suit, C. S., 159, not being applicable.

**6. Same—Evidence held sufficient to support finding that grantees did not breach condition subsequent.**

Findings to the effect that defendants were grantees in a deed containing a condition subsequent that the grantees should support and take care of grantor for the remainder of his life, that the grantees gave the grantor a home until they were advised that he should be cared for in a sanatorium, that he was admitted by the sanatorium as a person unable to pay, that thereafter the grantees paid for his laundry and furnished personal necessities until his death from tuberculosis, that prior to his death the sanatorium was advised of the conveyance but made no effort to have the conveyance canceled during the grantor's lifetime and did not bill grantees for the grantor's maintenance, and that the grantor never requested a reconveyance and made no effort to have the deed canceled, *is held* sufficient to support the court's finding that the grantees did not breach the condition subsequent.

APPEAL by plaintiff from *Johnston, Special Judge,* at 28 July, 1941, Special Term, of MECKLENBURG. Affirmed.

This is a civil action brought by plaintiff, administrator of John M. Privette, against defendants to have a certain deed made by John M. Privette, who died intestate, on 26 August, 1940, set aside and declared null and void.

On 18 March, 1937, a deed was made by John M. Privette to defendants, who agreed to support him the balance of his life—on failure the deed to become null and void. The plaintiff contends that the conditions of the deed were breached and John M. Privette was put in the Mecklenburg Sanatorium, where he died indebted to the Sanatorium in the sum of $1,324.40. "Wherefore, plaintiff prays judgment that the

deed set out in paragraph 4 be set aside and declared null and void to the end that said property may be sold to make assets and for judgment against the defendants for the amount of the rents and profits less any sums expended by the defendants for the care and support of the said John M. Privette."

The defendants denied that they had breached their contract and that the deed was null and void. They allege that they are absolute owners of the real estate conveyed by the deed in fee simple. The defendants further demur *ore tenus* to the complaint.

The judgment of the court below was as follows: "This cause coming on to be heard before the undersigned, at which time a jury trial was waived and the entire matter submitted to the court to determine the rights of the parties; after hearing the pleadings and the evidence offered by both parties the court finds the following facts: That J. M. Privette was a man of some years of age, having a son and daughter, both of whom are living in some western state. He had no other kinsmen in North Carolina; that he was the owner of some real estate on the Statesville Road, near the City of Charlotte, worth anywhere from $650.00 to $1,000.00; that on the 18th day of March, 1937, he conveyed this property to the defendants, Thomas and Helms, by an absolute deed with the following in the face of the deed:

" 'The sole consideration of this conveyance is the agreement of the parties of the second part to give the party of the first part a home with said parties of the second part and support and take care of the said party of the first part for and during the remainder of his natural life, and should they, the said parties of the second part, hereafter refuse or fail to carry out or perform said agreement, then this conveyance shall thereupon become null and void and the party of the first part is entitled in any such event to the immediate possession and use of said property, but due the parties of the second part reasonable compensation for all expenditures and services rendered theretofore on account of this conveyance, less the amount of the worth of the use of said property while in the possession of the said parties of the second part.'

"That immediately thereafter the said Privette went into the home of the defendants, Thomas and Helms, Thomas being a widower, and Mrs. Helms being his daughter, all living in one household; that the said Privette remained in said home until about the middle of April, 1938, when it was noticed that he was coughing a great deal, not resting well at night, etc., and upon advice of friends, Mrs. Helms took him to the Mecklenburg Sanatorium, the same being a public institution run by the County of Mecklenburg for the treatment of tuberculosis, and under the supervision of Dr. Seay. When Dr. Seay examined the said Privette, he found that he was suffering from a far advanced case of tuberculosis,

and advised that for his own health and the health of the public that the said Privette should be committed to said hospital, and there remain for treatment. He further advised that all members of the Thomas and Helms household, having been exposed to the sputum of the said Privette, should be examined and see whether or not they had contracted tuberculosis; that thereupon, about the 14th day of April, 1938, the said Privette entered said Sanatorium and remained there until August 26, 1940, when he died as a result of tuberculosis, the sanatorium being unable to arrest the ravages of the disease.

"That when Privette entered the hospital the superintendent in charge of the said hospital was advised that he was without means, and thereupon agreed to take him in to the hospital without pay, but did state that he thought that his friends should pay his laundry bill, which would amount to approximately one dollar per month; that thereafter, and prior to the death of the said Privette, the court being unable to find the exact date, the sanatorium was advised of the conveyance hereinbefore mentioned, but no effort was made on the part of the sanatorium, and no effort was made on the part of the said Privette, to have said conveyance canceled, during the lifetime of the said Privette, and the court is unable to find that Privette ever did request that the property be reconveyed to him or that there had been a failure in consideration.

"The court further finds as a fact that the defendants herein were never forwarded any bills by the sanatorium for any amount other than the laundry bill of the said Privette, and the court further finds that such necessities as a set of false teeth, some pajamas and other things that the said Privette needed personally were furnished to him by the defendants when requested either by Privette or by the hospital, and that the defendants paid such bills as were rendered to them by the sanatorium.

"As above stated, the said Privette died on or about August 26, 1940, in the sanatorium, and thereafter, to wit: upon March 7, 1941, Brock Barkley was duly appointed administrator of his estate by the clerk of the Superior Court of Mecklenburg County and the sanatorium filed with him its bill for $1,323.40, the same being a charge of $1.50 per day for the time that the said Privette was in the said sanatorium, plus certain X-rays and other incidents necessary to his treatment; that no such bill was ever rendered to the defendants during the life of the said Privette.

"The court further finds as a fact that the said Privette was carrying certain insurance in a fraternal order, which insurance had been allowed to lapse, and the defendants paid the back dues to reinstate said insurance, and kept the payments of the same up until his death, which amounted to $ ......... , as shown by the receipts produced by the defendant

Thomas, and as a result thereof, enough money was received from said insurance to properly and decently bury the remains of the said Privette without expense to Mecklenburg County or anybody else.

"Upon these facts the court is of the opinion and so holds that the plaintiff is not entitled to recover, and the action is dismissed. This 8th day of August, 1941. A. Hall Johnston, Judge presiding."

To the signing of the foregoing judgment and the judgment itself, plaintiff excepted, assigned error, and appealed to the Supreme Court.

*James L. DeLaney for plaintiff.*
*Thaddeus A. Adams for defendants.*

CLARKSON, J. In the record is the following: "A jury trial was waived and the entire matter submitted to the court to determine the rights of the parties."

In *Blackburn v. Woodmen of the World,* 219 N. C., 602 (606), we find: "The court below, whom it was agreed could find the facts, found the facts contrary to defendant's contentions. It was bound by the findings of fact by the court below to the same extent as if a jury had so found."

We think, on the facts found by the court below, there being competent evidence to sustain them, that there is no error in the judgment. The property in controversy is real estate. If there was a forfeiture the property would descend to the heirs at law of John M. Privette. To sell land to make assets to pay debts, the method is set out in the statutes as follows:

N. C. Code, 1939 (Michie), sec. 79: "The petition, which must be verified by the oath of the applicant, shall set forth, as far as can be ascertained: 1. The amount of debts outstanding against the estate. 2. The value of the personal estate, and the application thereof. 3. A description of all the legal and equitable real estate of the decedent, with the estimated value of the respective portions or lots. 4. The names, ages and residences, if known, of the devisees and heirs at law of the decedent."

Section 80, in part: "No order to sell real estate shall be granted till the heirs or devisees of the decedent have been made parties to the proceeding, by service of summons, either personally or by publication, as required by law," etc.

In *Neighbors v. Evans,* 210 N. C., 550 (553), is the following: "In *McNeill v. McBryde,* 112 N. C., 408 (411-12), it is said: 'We think, however, that the petition is deficient in that it does not comply with section 1437 of the Code (now C. S., 79), which requires that it shall set forth "the value of the personal estate and the application thereof."

BARKLEY *v.* THOMAS.

It simply states that the personal estate "is wholly insufficient to pay his (intestate's) debts and the costs and charges of administration." The purpose of the statute, in requiring the particulars therein mentioned to be stated in the petition, was to enable the court to see whether a sale was necessary; but the present allegation wholly fails to give any such information. It is important that the requirements of the statute should be observed, and we must sustain the demurrer upon this ground. *Shields v. McDowell,* 82 N. C., 137.' " *Watson v. Peterson,* 216 N. C., 343 (345).

The provision in the deed was a condition subsequent. *Helms v. Helms,* 135 N. C., 164—rehearing 137 N. C., 206. At page 207, we find: "Then follow the words, if inserted, 'If he fails to support, this deed is to be void.' These are apt words to create a condition subsequent. If no title was to pass, then there was no necessity for declaring that the deed should be void." At pp. 208-9, it is written: "We find in 13 Cyc., 689, the law laid down as held by the Supreme Court of the United States as late as 1878: 'If the condition subsequent is broken, that did not *ipso facto* produce a reverter of the title. The estate continued in full force until the proper step was taken to consummate the forfeiture. This could be done only by the grantor during his lifetime and after his death by those in privity of blood with him. In the meantime, only the right of action subsisted and that could not be conveyed so as to vest the right to sue in a stranger.' *Rush v. R. R.,* 97 U. S., 613; 1 Jones on Conveyances, 728; *Nicoll v. Railroad, supra* (12 N. Y., 121), where the question is discussed and decided. But where a fee simple without a reservation of rents is granted upon a condition subsequent, as in this case, there is no estate remaining in the grantor. There is simply a possibility of reverter, but that is no estate. There is not even a possibility coupled with an interest, but a bare possibility alone. It has been said that such possibilities were assignable in equity, but those were interests of a very different character. Chancellor Kent says: 'A court of equity will never lend its aid to divest an estate for the breach of a condition subsequent.' Kent Com., 130."

In *Brittain v. Taylor,* 168 N. C., 271 (273), it is stated: "The stipulation in the deed for support and maintenance is not like those found in the cases to which the learned counsel for defendant has referred in his brief and argument, such as *Helms v. Helms,* 135 N. C., 164; *McCardle v. Kennedy,* 92 Ga., 198 (44 Am. St., 85); and *Pownal v. Taylor,* 10 Leigh, 172 (34 Am. Dec., 725), where the stipulation merely for support and maintenance of the grantor, or someone else, with no words of strict condition or forfeiture was held to be nothing more than a covenant, for the breach of which damages could be recovered, and constituted a charge upon the land. But this provision is not of that kind, for it expressly

stated in the deed that if the grantee failed to comply with the require-ment of support and maintenance, the deed should be 'null and void.' This is a condition subsequent by its very terms, and also according to the authorities. . . . (p. 273). The language of the deed under consideration leaves no doubt as to what the parties intended. It is plain, intelligible, and explicit. The grantor conveyed the estate upon the condition that she should be supported, and provided, in order to coerce its performance, that if the grantor failed to do so the deed should be void and of no effect, which means no more or less than the estate should cease in the grantee and revest in her; for if the deed becomes void, the grantee can no longer take under it, and the estate cannot be in abeyance, it must vest in the grantor. . . . (pp. 276-7). It is unquestionably true that not only the grantor, during his life, but his heirs, or privies in blood, after his death, may take advantage of the breach of a condition subsequent, and bring suit for the land or to declare the estate forfeited. Sheppard's Touchstone, 125; Tiedeman on Real Property, sec. 207; *Den ex Dem. Southard v. Central R. Co.,* 26 N. J. L., 21; *Hooper v. Cummings,* 45 Me., 359; *Avelyn v. Ward,* 1 Vesey, Sr., 422; 4 Kent Comm., 127; 2 Cruise Digest, ch. 2, sec. 49. *Ruch v. Rock Island,* 97 U. S., at p. 696, held that 'If the conditions subsequent were broken, it did not *ipso facto* produce a reversion of the title. The estate continued in full force until the proper step was taken to consummate the forfeiture. This could be done only by the grantor during his life-time and after his death by those in privity of blood with him.' . . . (p. 277). It is not necessary to decide whether anyone other than the grantor and his heirs can take advantage of a forfeiture arising from the breach of a condition subsequent, as the plaintiffs in this case are the heirs of the grantor, Margaret Taylor." *Huntley v. McBrayer,* 169 N. C., 75.

The only question on this aspect: Was there sufficient evidence to show a violation of the condition subsequent? We think not. The court below found the facts on competent evidence. "The sanatorium was advised of the conveyance hereinbefore mentioned, but no effort was made on the part of the sanatorium, and no effort was made on the part of the said Privette, to have said conveyance canceled, during the life-time of the said Privette, and the court is unable to find that Privette ever did request that the property be reconveyed to him or that there had been a failure in consideration."

C. S., sec. 159, is not applicable under the record facts in this case.

On the entire record we think the facts found by the court below on competent evidence supports the judgment rendered.

For the reasons given, the judgment of the court below is

Affirmed.